Plaintiff was injured on September 14, 1993. The hearing deputy made findings that her employer's principal place of business was in Pennsylvania, and that the last act in the sequence of events creating her contract of employment occurred in that State. Prior to October 1, 1991 — the effective date of N.C.G.S. § 97-36(iii) — those conclusions would have been dispositive on the issue of our jurisdiction. However, since the three grounds for jurisdiction in the statute are stated in the alternative, and every employee has a "principal place of employment" in some state — or at least those employees utilizing transports, notably including airline flight crews and interstate truck drivers — it is incumbent on us to make findings and conclusions on where plaintiff's was, as well. More than one state may have jurisdiction of the same compensable injury, as contemplated by the credit provision of § 97-36.
Our Courts have yet to address the factual basis for determining "principal place of employment", but the decisions in other jurisdictions are fairly consistent, largely because the concept was fleshed out in the Model Act proposed by the federal National Commission on Workers' Compensation, whose "nineteen essential recommendations" inspired reform of our Act in 1973, and in many other jurisdictions in that era. Larson, Workers'Compensation, § 87.42(b) and Appendix H, Model Act, § 7(d)(4). The Model Act allows a traveling employee to determine his principal place of employment by contract, but our law prohibits that. Id.,Model Act, § 7(d)(5); N.C.G.S. § 97-6.
It appears from the cases that the single most important of the criteria is the primary location where the employee is required to board and leave the transport. The plaintiff testified without contradiction that, "I picked up my truck in Greensboro and I could turn my truck in in Greensboro without it going against me . . . ." The person she considered her direct supervisor, district sales manager Virgil Thomas, was also based in Greensboro. She was dispatched for various loads from Pennsylvania, North Carolina, and California, but did not have to be personally present at these places to get the instructions, and during cross country trips would call in after delivering a load and receive instructions on picking up another. There is no evidence that she initially picked up her truck anywhere other than the Greensboro terminal. It is also notable that she was domiciled in North Carolina, as her employer recognized by calculating her withholding under North Carolina revenue laws. The declaration of the defendant's president that "all our drivers are assigned and work for the Carlisle [Pennsylvania] terminal", rather than the several terminals that the company maintained across the country, obviously does not address the question of where plaintiff was, in fact, based. See Tr. pp. 11-12, 14-17, 19, 22, 28-30, 33-34, 36, 39-41, 44-45, and Exh. pp. 9-10.
Consequently, I believe the Commission has jurisdiction of this claim (with any award subject to a credit for compensation paid under Pennsylvania law), and must respectfully DISSENT.
 S/ ________________________ J. RANDOLPH WARD COMMISSIONER
JRW:md